## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Edmond Calloway, | : | |
| **Plaintiff** | : | Civil Action |
| | : | Case  No.# |
| vs. | : | |
| | : | |
| (1). Sergeant: Bauman | : | |
| (2). Correctional Officer: S. Beaver | : | |
| (3). Barber Instructor: Brenda Attinger | : | **FILED** |
| (4). Principal: George Donadi | : | **SCRANTON** |
| (5). Dep. Supt. for Facilities Management: | : | DEC 1 4 2020 |
| Anthony Luscavage | : | |
| (6). Dep. Supt. for Centralized Services: | : | PER _____ |
| William Nicklow | : | DEPUTY CLERK |
| (7). Superintendent: Thomas McGinley | : | |
| (8). Secretary of Correcctions: John Wetzel | : | |
| **Defendants** | : | |

### <u>Civil Complaint</u>

**I. Jurisdiction and Venue:**

1. This federal civil rights action is authorized under 42 U.S.C. § 1983. The court has jurisdiction over this action pursuant to 28 U.S.C.  §§ 1331 and 1343 (a)(3). This court also has jurisdiction to grant the injunctive relief requested herein pursuant to 28 U.S.C. §§ 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure.

2. The events given rise to the instant claim and causes of action occurred in the jurisdiction of the Middle District of Pennsylvania making it the appropriate venue for this suit pursuant to 28 U.S.C. § 1391 (b)(2).

1

## II. Plaintiff:

3. Plaintiff, Edmond Calloway, is at all times hereinafter a prisoner in the care, custody and control of

   the Pennsylvania Department of Corrections. He has a physical address for service of process being:

   Edmond Calloway #CZ-1154, SCI-Coal Township, 1 Kelley Drive, Coal Township,PA 17866.

## III. Defendants:

4. Defendants, Sgt. Bauman, S. Beaver, Brenda Attinger, George Donadi, Anthony Luscavage, William

   Nicklow, and Thomas McGinley, are all employed by the Pennsylvania Department of Corrections at

   SCI-Coal Township. - Defendant: John Wetzel, is employed by the Department of Corrections.

5. Defendant: Sgt. Bauman, is at all times hereto a correctional sergeant at SCI-Coal Township, is

   responsible for the care, custody and control of its prison population, ensuring that prisoners' rights

   are not violated and enforcing the policies of the PA-DOC. He has an address for service of process

   being: SCI-Coal Township, 1 Kelley Drive, Coal Township,PA 17866.

6. Defendant: Officer:  S. Beaver, is at all times hereto a correctional officer at SCI-Coal Township, is

   responsible for the care, custody and control of its prison population, ensuring that prisoners' rights are

   not violated and enforcing the policies of the PA-DOC. She has an address for service of process being:

   SCI-Coal Township, 1 Kelley Drive, Coal Township,PA 17866.

7. Defendant: Barber Instructor: Brenda Attinger, is at all times hereto a barber instructor at SCI-Coal Township,

   is responsible for the care, custody and control of its prison population, ensuring that prisoners' rights are not

   violated and enforcing the policies of the PA-DOC. She has an address for service of process being: SCI-

2

Coal Township, 1 Kelley Drive, Coal Township,PA 17866.

8. Defendant: Principal: George Donadi, is at all times hereto a principal at SCI-Coal Township, is responsible

for the care, custody and control of its prison population, ensuring that prisoners' rights are not violated

and enforcing the policies of the PA-DOC. He has an address for service of process being: SCI-Coal Township

1 Kelley Drive, Coal Township,PA 17866.

9. Defendant: Deputy Superintendent for Facilities Management: Anthony Luscavage, is at all times hereto

a Deputy Superintendent at SCI-Coal Township, is responsible for the care, custody and control of its prison

population, ensuring that prisoners' rights are not violated and enforcing the policies of the PA-DOC. He has

an address for service of process being: SCI-Coal Township, 1 Kelley Drive, Coal Township, PA 17866.

10. Defendant: Deputy Superintendent for Centralized Services: William Nicklow, is at all times hereto a Deputy

Superintendent at SCI-Coal Township, is responsible for the care, custody and control of its prison

population, ensuring that prisoners' rights are not violated and enforcing the policies of the PA-DOC. He

has an address for service of process being: SCI-Coal Township, 1 Kelley Drive, Coal Township, PA 17866.

11. Defendant: Superintendent: Thomas McGinley, is at all times hereto a Superintendent at SCI-Coal Township,

is responsible for the care, custody and control of its prison population, ensuring that prisoners' rights are

not violated and enforcing the policies of the PA-DOC. He has an address for service of process being: SCI-

Coal Township, 1 Kelley Drive, Coal Township, PA 17866

12. Defendant: Secretary of Corrections: John Wetzel, is at all times hereto the Secreatry of Corrections at the

Pennsylvania Department of Corrections, is responsible for the care, custody and control of its prison

population, ensuing that prisoner's rights are not violated and enforcing the policies of the
PA-DOC. He has an address for service of process being: The Department of Corrections,
1920 Technology Parkway, Mecahnicsburg, PA  17050.

13. The Defendants are being sued in their individual and official capacity.

14. The Defendants are all citizens of the Commonwealth of Pennsylvania and was at all times
mentioned herin acting under the color of law.

**IV. Facts:**

15. On August 7, 2019, the plaintiff was assigned as a barber and was working in the SCI-Coal
Township's barbershop giving haircuts to prisoners in accordance with specific PA-DOC
regulations. - **( SEE VIDEO SURVEILLANCE ON THIS DATE )**

16.  Refusing a work assignment or missing a work assignment can subject a prisoner at SCI-
Coal Township to disciploinary action including, but not limited to placement in solitary
confinement.

17.  On August 7, 2019, Defendant: Bauman, was the officer assigned to the post outside of the
Barbershop & Gym, and who was suppose to ensure that all prisoners pass through the
metal detector before entering the Barbershop or Gym. - **( SEE POST ORDER RULES, AND
VIDEO SURVEILLANCE ON THIS DATE )**

18.  The Barbershop is in the Program Service Building which is a building separate from the
buildings where prisoners are housed.

19.  On August 7, 2019, at approximately 9:10am, prisoner Bordoy-Rabelo, state no.# MN-3374
was sent to the barbershop to get a haircut. - **( SEE VIDEO SURVEILLANCE PON THIS DATE
AND TIME)**

20. Inmate: Bordoy-Rabelo was assigned to the plaintiff's chair to get his haircut and asked plaintiff for a specialty haircut that was prohibited by PA-DOC Policy. - **( SEE VIDEO SUR-VEILLANCE ON THIS DATE AND TIME )**

21. The plaintiff advised inmate: Bordoy-Rabelo, that the requested haircut was prohibited by PA-DOC Policy and that he was not allowed to providde such a haircut per the Superinten-dent, Deputy, and my Supervisor. - **( SEE VIDEO SURVEILLANC ON THIS DATE & TIME )**

22. Inmate: Bordoy-Rabelo became irrate and verbally disrespectful. To try and deescalate the situation, the plaintiff advised Inmat: Bordoy-Rabelo that it would be better to have another barber cut his hair.

23. At approximately 9:30 am, after having his haircut by another barber Inmate: Bordoy-Rabelo left the barbershop and returned back to his housing unit. - **( SEE VIDEO SURVEILL -ANCE ON THIS DATE & TIME )**

24. At approximately 9:40 am Defendant: Beaver allowed Inmate: Bordoy-Rabelo to leave his housing unit a second time without authorization. Bordoy-Rabelo was carrying a weapon.- **( SEE VIDEO SURVEILLANC ON THIS DATE & TIME, AND POST ORDER UNIT RULES )**

25. After leaving his housing unit Inmate: Bordoy-Rabelo, carrying a weapon entered the build-ing housing the barbershop. - **( SEE VIDEO SURVEILLANC ON THIS DATE & TIME )**

26. Upon entering the part of the Program Services Building housing the barbershop, Bordoy-Rabelo bypassed the metal detector due to Defendant: Bauman not being at his post. - **( SEE VIDEO SURVEILLANCE ON THIS DATE & TIME ) - and - ( PA-DOC CODE OF ETHICS ) - and - ( SEE POST ORDER RULES )**

27. Upon bypassing the metal detector Inmate: Bordoy-Rabelo entered the barbershop carrying a weapon (lock-in-a-sock) and proceeded directly to the plaintiff and began

striking him repeatedly in the head. - **(SEE VIDEO SURVEILLANCE ON THIS DATE & TIME)**

28. The plaintiff faced with a life threatening attack, began defending himself and approximat-
ely 9:42am, Defendant: Bauman arrived from inside the gym and ended the attack with
the use of pepper spray. - **( SEE VIDEO SURVEILLANCE ON THIS DATE & TIME )**

29. As a result of the attack Defendant: Bauman charged the plaintiff with fighting and refusing
to obey an order under misconduct no.# D188738, and was placed in disciplinary confine-
ment despite the fact that he had done nothing wrong. - **( SEE EXHIBIT A, - and - SEE
VIDEO SURVEILLANCE ON THIS DATE& TIME )**

30. As a result of the assualt, plaintiff received multiple injuries and was placed in disciplinary
confinement for weeks.

31. On August 14, 2019, a disciplinary hearing was held and the Hearing Examiner found the
plaintiff guilty of fighting and refusing to obey an order and sentenced him to (30) days of
disciplinary confinement.

32. On August 21, 2019, on appeal to the Program Review Committee, the findinds of the
Hearing Examiner were upheld.

33. On August 23, 2019, on appeal Defendant: McGinley exonerated plaintiff of any and all
wrongdoing, stating: "FOLLOWING A THOROUGH REVIEW OF THE INCIDENT THAT LED TO
THIS INFRACTION AND THE VIDEO EVIDENCE THAT CLEARLY SUPPORTS AN UNPROVOKED
ASSAULT AGAINST YOU FOLLOWED BT THE NEED TO PROTECT YOURSELF FROM FURTHER
INJURY WHICH JUSTIFIED YOUR ACTIONS, IT IS THE FACILITY MANAGER'S DECISION TO
EXONERATE YOU OF THIS MISCONDUCT". - **(SEE EXHIBIT B,)**

34. Staff at SCI-Coal Township are permitted without consequences, to disregard established
PA-DOC Policies and Procedures.

35. As a result of the widespread  disregard of established PA-DOC Policies and procedures by staff at SCI-Coal Township, tension among the prisoner population are unusaully high.

36. As a result of the widespread disregarding of established PA-DOC Policies and Procedures by staff at SCI-Coal Township, and particularly the defendants, the plaintiff was able to be assaulted.

37. Had established PA-DOC Policies and Procedures been followed by staff at SCI-Coal Township, the plaintiff never would have been assaulted with a weapon while performing his job. - **(See Post Order Rules) -and- (Department of Corrections Code of Ethics)**

38. As a result of the assault, plaintiff received multiple contusions and lacerations which required c closing with staples. - **(See Medical Records and Pictures taken on 8/7/19)**

39. As a result of the assault, plaintiff has been plagued with frequent migraine headaches. - **(See Medical Records from 8/7/19, to present)**

40. As a result of the assault, plaintiff has become paranoid that another attack could come at any moment. - **(See Psychiatrist Reports/ Records from 8/7/19, to present)**

41. As a result of the assault, plaintiff has received a traumatic brain injury, which caused him to have (PTSD) Post Traumatic Stress Disorder)

42. As a result of the assault, plaintiff has had a seizure like episode where he needed medical assistance, and had to be taken to a outside hospital. - **(See Medical Records on 10/6/19)**

43. As a result of the assault, plaintiff has been taken medication to cope with the effects from the assault. - **(See Medical Records from 8/7/19, to present)**

44. As a result of the assault, plaintiff has been meeting regularly with the psychiatrist, to cope with the effects from the assault. - **(See Psychiatrist Reports/Records from 8/7/19, to present)**

45. On August 26, 2019, plaintiff returned back to work and upon his arrival Defendant: Attinger, approached plaintiff about a rumored lawsuit that she heard plaintiff was supposed to be filing regarding the assault.

46. Defendant: Attinger wanted to know if she was going to be sued in the lawsuit. Plaintiff
    Did not give Defendant: Attinger a definite answer, instead, plaintiff replied back saying:
    Whomever was responsible for failing to protect me while I was doing my job will be
    Named in the suit.

47. Shortly after that conversation, Defendant: Attinger began to act very hostile towards
    Plaintiff. Such as unprovoked verbal abuse by yelling at plaintiff and making threats about
    Taking plaintiff's job away from him for no unjustifiable reason other than retaliation.

48. After receiving this unwarranted treatment from Defendant: Attinger, plaintiff
    Immediately brought his concerns to all of her superiors.

49. On October 28, 2019, plaintiff addressed a request slip to Defendant: McGinley, regarding
    Defendant's: Attinger's retaliatory acts toward him. - **( See Exhibit C,)**

50. On October 29, 2019, Defendant: Attinger filed a fabricated Misconduct Report against
    Plaintiff. - **( See Exhibit D,) - and - ( See DC-ADM 801 Inmate Discipline Procedure
    Manual )**

51. On November 4, 2019, a hearing was held and plaintiff pled not guilty to the charge, and
    Explained the situation surrounding the misconduct in full.

52. The Hearing Examiner then found plaintiff guilty, and imposed a sanction of (15) days
    Cell restriction.

53. On November 4, 2019, and November 12, 2019, plaintiff appealed the Hearing Examiner's
    Sanction. - **(See Exhibits E, and F,)**

54. On November 12, 2019, plaintiff filed a grievance against Defendant: Attinger, for her
    Retaliatory acts against plaintiff. - **( See Exhibit G,)**

55. On November 14, 2019, The Program Review Committee dismissed the misconduct issued
    By Defendant: Attinger entirely. - **( See Exhibt H, )**

8

56. On November 21, 2019, plaintiff filed another grievance against Defendant: Attinger for her continued acts of retaliation against plaintiff. - **(See Exhibit I,)**

57. On November 27, 2019, plaintiff addressed a letter to the Executive Deputy Secretary of the Department of Corrections informing them of Defendant: Attinger's retaliatory acts against plaintiff. All to no avail. Despite the evidence provided, they claimed she did nothing wrong. - **(See Exhibit J,)**

58. On December 10, 2019, plaintiff also addressed a letter to Defendant: Wetzel, and the Bureau of Investigations and Intelligence of the Department of Corrections, informing him of Defendant: Attinger's conduct and retaliatory acts against plaintiff. - **( See Exhibit K, )**

59. On January 29, 2020, Defendant: Attinger fabricated yet another report against plaintiff. This time Defendant: Attinger, included Defendant: Donadi in her "Campaign of Harrassment". On this date at approximately 3:30pm - 3:45pm, Defendant: Donadi Approached plaintiff at the end of his work day at the barbershop and informed plaintiff that he was suspended from his job until further notice.

60. When plaintiff asked Defendant: Donadi, why was he being suspended? Defendant: Donadi replied saying: Defendant: Attinger has informed him that there was an incident In the barbershop on January 28, 2020, and plaintiff failed to follow Defendant: Attinger's Order.

61. Plaintiff then responded, if that was true, then why wasn't a misconduct issued to me as The D.O.C. Policy states in accordance with misconduct charges. - **( See DC-ADM 801 Policy on Misconduct Charges)** - and - **( Exhibit L,)**

62. Plaintiff informed Defendant: Donadi, that the allegations is false, Defendant: Attinger is Just retaliating against him and I have the proof. I have been keeping daily notes and the Video surveillance will verify what I'm saying is true. - **( See Exhibit M, )** - and - **( Video Surveillance taken on 1/29/20, at approximately 3:30pm-3:45pm)**

63. Plaintiff also requested Defendant: Donadi, to review the video surveillance on the date & time in question to validate what plaintiff was saying as being the truth; but Defendant: Donadi chose not too and instead colluded with Defendant: Attinger by falsely suspending plaintiff from his job.

64. Despite the evidence provided by plaintiff for review, and plaintiff making a showing of D.O.C. Policy and Code of Ethics violations committed by Defendant: Attinger, Defendant: Donadi still chose to ignore plaintiff's grievance claims regarding the repeated acts of retaliation. – (See **DC-ADM 801 Policy on Misconduct charges**) – **and** – (**DC-ADM 804 Grievance Policy**) – and – (**D.O.C. Code of Ethics**)

65. Plaintiff has addressed letters, Request Slips, and appealed Grievances, to all of Defendant: Attinger's superiors, including Defendants: Donadi, Luscavage, Nicklow, McGinley, and Wetzel. They were all made aware of Defendant: Attinger's "Campaign of Harrassment'". – (**See Exhibits:** C,G,H,I,K,L,M,N,Q, and R,)

66. After continuing to receive ongoing and repeated acts of retaliation from Defendant: Attinger, plaintiff filed an additional grievance against Defendant: Attinger on January 30, 2020. – (See **Exhibit M,**)

67. In that grievance, plaintiff again, complained to Defendant: Attinger's superiors about her "Campaign of Harrassment" with repeated acts of retaliation by falsifying documents against plaintiff.

68. Again plaintiff sought assistance from Defendant: Attinger's superiors, by addressing his concerns on request slips, letters, grievance appeals, and has had formal meetings in person with the following: (Donadi, Luscavage, Nicklow, and McGinley) all to no avail, because they all failed to act and colluded with Defendant: Attinger; by ignoring and turning a blind eye to plaintiff's complaints. – (See **Exhibits:** C, G, H, I, J, K, N, O, P,)

69. Plaintiff also sent letters, and appealed grievances to Defendant: Wetzel, informing him of the said conduct. All to no avail, because he also failed to act to plaintiff's complaints. – **(See Exhibits: G, I, J, K, M, and Q,)** In addition, plaintiff also filed a Code of Ethics complaint with the Department of Corrections. All to no avail, because they never responded.– **(See Exhibit: R,)**

70. All of the defendants did further retaliate against plaintiff by having him transferred to an institution further from his home-town creating a hardship on him and his family; and defaming plaintiff by fabricating defaming reports causing him to be unable to obtain employment in his occupation as a barber.

71. All of the defendants actions were done maliciously and wantonly, and with the sole intent to conspire to retaliate against plaintiff for exercising his constitutional right to file grievances.

## V. Exhaustion of Administrative Remedies:

72. Plaintiff has reported and filed institutional grievances concerning the assault, retaliatory conduct, job suspension, and defamation, which all give rise to this current cause of action against these defendants. Plaintiff has properly exhausted all of the institutional remedies available to him at each level for review. – **(See Exhibits: C, G, H, I, J, K, M, N, O, P, Q, R, S,)**

## VI. Cause of Action:

**Count #1**          DEFENDANT BAUMAN, IN VIOLATION OF PLAINTIFF'S EIGTH AMENDMENT RIGHT TO THE UNITED STATES CONSTITUTION, FAILURE TO PROTECT.

73. All prior paragraphs are incorporated herein by references and made this

paragraph.

74. Defendant: Bauman has worked for the Pennsylvania Department of Corrections for many years. (here-after PA D.O.C.)

75. Defendant: Bauman has attained the supervisory rank of sergeant and is knowledgeable of the types of conditions that create substantial risk to prisoners safety.

76. Defendant: Bauman has attended dozens of training sessions and classes on appropriate methods for ensuring proper care, custody and control of prisoners housed within the PA D.O.C..

77. Despite Defendant: Bauman having full knowledge of PA D.O.C. Directives, and D.O.C. Code of Ethics procedures, which forbids an officer from leaving his post without authorization from supervisory. Defendant: Bauman displayed gross negligence by allowing an inmate to bypass the metal detector with a metal weapon and enter the barbershop undetected executing an assault against plaintiff while he was working.

78. Defendant: Bauman displayed a reckless disregard to the substantial risk of injury that was created when he neglected his duty by leaving his post and failing to secure the barbershop as PA D.O.C. Directives require.

79. Defendant: Bauman's deliberate indifference to the substantial risk of injury was created when he failed to require a prisoner to go through the metal detector that is placed outside of the barbershop for that purpose caused and permitted plaintiff to be assaulted with a metal weapon; while performing his job.

80. Defendant: Bauman knew and was aware of the purpose of the metal detector and substantial risk of injury that would be created if he abandoned his post and failed to require a prisoner to go through the metal detector.

81. The risk of potential injury caused by Defendant: Bauman, when he abandoned

his post and failed to require a prisoner to go through the metal detector which is placed outside of the barbershop for that purpose was so obvious that a lay person would have easily recognized it and evidences the total and absolute absense of any concern for the welfare of his charges.

82. But for the actions of Defendant: Bauman as described herein, the plaintiff would not have been assaulted with a metal weapon and injured while performing his job.

83. Wherefore, plaintiff request judgement on this count.


Count #2          DEFENDANT BEAVER, IN VIOLATION OF PLAINTIFF'S EIGTH AMENDMENT
                  RIGHT TO THE UNITED STATES CONSTITUTION, FAILURE TO PROTECT.


84. All paragraphs are incorporated herein by reference and made this paragraph.

85. Defendant: Beaver has worked for the PA. D.O.C. for many years.

86. Defendant: Beaver has attended dozens of training sessions and classes on the appropriate methods for ensuring proper care, custody and control of prisoners housed within the PA. D.O.C..

87. Despite having knowledge of PA. D.O.C. Directives procedures, Defendant: Beaver's failure to follow and abide by PA. D.O.C. Directives caused a reckless disregard for the safety and welfare of others by allowing Inmate: Bordoy Rabelo, to leave the housing unit a second time without a pass created a substantial risk that injury would result.

88. Defendant: Beaver was deliberately indifferent to the substantial risk of injury that was created when she callously allowed Inmate: Bordoy-Rabelo to leave the housing unit without authorization.

89. Defendant: Beaver knew and was aware of the purpose of prisoners not being

13

allowed to leave the housing unit without authorization and the substantial risk of injury that was created when she recklessly allowed Inmate: Bordoy-Rabelo to leave the housing unit without authorization.

90. The risk of potential injury caused by Defendant: Beaver, when she callously allowed Inmate: Bordoy-Rabelo to leave the housing unit without authorization was so obvious that a lay person would easily recognize it and evidences the total and absolute absence of any concern for the welfare of others.

91. But for the neglectful actions of Defendant: Beaver as described herein, the plaintiff would not have been assaulted with a metal weapon and injured while performing his job for the D.O.C..

92. Wherefore, the plaintiff request judgement on this count.

Count #3     DEFENDANT ATTINGER, IN VIOLATION OF PLAINTIFF'S EIGTH AMENDMENT RIGHT TO THE UNITED STATES CONSTITUTION, FAILURE TO PROTECT. DEFENDANT ATTINGER, ALSO IN VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHT TO THE UNITED STATES CONSTITUTION, RETALIATION, AND DEFAMATION.

93. All paragraphs are incorporated herein by reference and made this paragraph.

94. Defendant: Attinger has worked for the PA D.O.C. for many years.

95. Defendant: Attinger has attended dozens of training sessions and classes on the appropriate methods for ensuring proper care, custody and control of prisoners housed within the PA D.O.C..

96. Despite having knowledge of PA D.O.C. Directive procedures, Defendant: Attinger's failure to follow and abide by PA D.O.C. Directives caused a reckless disregard for the safety and welfare of others. Defendant: Attinger knew and was aware of the purpose of inmates not being allowed to enter the

14

barbershop without authorization and the substantial risk of injury that was created when she callously allowed Inmate: Bordoy-Rabelo to re-enter the barbershop without authorization.

97. Defendant: Attinger failed to protect plaintiff, when she allowed Inmate: Bordoy-Rabelo to re-enter the barbershop without authorization while carrying a weapon and assaulting plaintiff. Defendant: Attinger further failed to protect plaintiff, by at least failing to deploy her self defense mace on Inmate: Bordoy-Rabelo; when she observed him assaulting plaintiff with a weapon.

98. The risk of potential injury was created by Defendant: Attinger, when she callously allowed Inmate: Bordoy-Rabelo to re-enter the barbershop without authorization was so obvious that a lay person would easily recognize it and evidences the total and absolute absence of any concern for the welfare of others.

99. In addition, plaintiff also filed grievances against Defendant: Attinger for her retalitory conduct against him. In doing so, Defendant: Attinger further retaliated against plaintiff with ongoing repeated acts of retaliation by engaging in a "Campaign of Harrasment" for filing grievances. Defendant: Attinger did cause plaintiff to be removed from his job at the barbershop due to fabricated reports and denied plaintiff from being able to actively pursue his Barber Teacher's License.

100. Despite Defendant: Attinger having knowledge of the PA D.O.C. Directives, and Code of Ethics, which prohibits falsifying reports and retaliation for one exercising his/her constitutional right to file a grievance; she continued to retaliate against plaintiff.

101. But for the actions of Defendant: Attinger as described herein, plaintiff would not have been assaulted with a metal weapon while performing his job;

nor would plaintiff have been removed from his job and prevented from

furthering his career as a Barber's Teacher.

102. Wherefore, plaintiff request judgement on this count.

Count #4          DEFENDANT DONADI, IN VIOLATION OF PLAINTIFF'S FIRST AMENDMENT

RIGHT TO THE UNITED STATES CONSTITUTION, RETALIATION/RETALIATION

CONSPIRACY AND DEFAMATION.

103. All paragraphs are incorporated herein by reference and made this paragraph.

104. Defendant: Donadi has worked for the PA. D.O.C. for some time now.

105. Defendant: Donadi has attended many training sessions and classes on the

appropriate methods for ensuring proper care, custody and control of prisoners

housed within the PA. D.O.C..

106. Defendant: Donadi having knowledge of the PA. Directives, and D.O.C. Code

of Ethics, which prohibits retaliation and falsifying of documents; has a

duty to uphold and enforce the PA. D.O.C. Directives.

107. The PA. D.O.C. has put into place a chain of command procedure to follow.

When expressing one's concerns or filing grievances; but the superior officers

often fail to enforce established PA. D.O.C. policies against their

subordinates.

108. Plaintiff did adhere to the PA. D.O.C.'s chain of command procedure by

presenting to Defendant: Donadi, evidence of Defendant: Attinger's

unprofessional conduct, but Defendant: Donadi being the principal and

Defendant: Attinger's immediate supervisor failed to act and allowed Defendant:

Attinger to continue her "Campaign of Harrassment" against plaintiff.

109. Defendant: Donadi being the principal who is in charge of overseeing Defendant:

Attinger and the barbershop, had the authority and duty to correct the

violations; but chose not too. Instead, did conspire with Defendant: Attinger to retaliate and commit defamation against plaintiff.

110. But for the actions of Defendant: Donadi as described herein, plaintiff would not have been retaliated against, nor would plaintiff have been removed from his job and prevented from furthering his career as a Barber Teacher due to part in defamation.

111. Wherefore, plaintiff request judgement on this count.

Count #5       DEFENDANT LUSCAVAGE, IN VIOLATION OF PLAINTIFF'S EIGTH AMENDMENT RIGHT TO THE UNITED STATES CONSTITUTION, FAILURE TO PROTECT. DEFENDANT LUSCAVAGE ALSO IN VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHT TO THE UNITED STATES CONSTITUTION, RETALIATION/RETALIATION CONSPIRACY, AND DEFAMATION.

112. All paraghraphs are incorporated herein by references and made this paraghraph.

113. Defendant: Luscavage has worked for the PA. D.O.C. for many years.

114. Defendant: Luscavage has attended dozens of training sessions and classes on the appropriate methods for ensuring proper care, custody and control of prisoners housed within the PA. D.O.C..

115. Defendant: Luscavage having knowledge of the PA. Directives, and D.O.C. Code of Ethics, has a duty to uphold and enforce the PA. D.O.C. Directives.

116. THe PA. D.O.C. has put into place a chain of command procedure to follow when expressing one's concerns or filing grievances; but the ranking officers often fail to enforce established PA. D.O.C. policies against their subordinates.

117. Plaintiff did adhere to the PA. D.O.C.'s chain of command procedures by presenting to Defendant: Luscavage evidence of Defendant: Bauman and Defendant: Attinger's, unprofessional conduct; but Defendant: Luscavage being the

authoritative supervisor of both defendants, but failed to act. Defendant: Luscavage allowed both defendants to continue their "Campaign of Harrassment" without holding either accountable for their conduct.

118. Plaintiff has personally expressed his concerns regarding both defendants to Defendant: Luscavage. Plaintiff has also presented him with documented evidence of violations committed by both defendants against plaintiff; but Defendant: Luscavage failed to act or hold either accountable for their conduct.

119. Defendant: Luscavage being the Deputy Superintendent, who is in charge of facility management inside of the prison and having the authority and duty to correct the violations chose not too. Instead did collude with Defendant: Attinger; and failed to protect plaintiff.

120. But for the actions of Defendant: Luscavage as described herein, plaintiff would not have been assaulted with a metal weapon while performing his job, retaliated against, or defamed.

121. Wherefore, plaintiff request judgement on this count.

Count #6        DEFENDANT NICKLOW, IN VIOLATION OF PLAINTIFF'S EIGTH AMENDMENT RIGHT TO THE UNITED STATES CONSTITUTION, FAILURE TO PROTECT. DEFENDANT NICKLOW ALSO IN VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHT TO THE UNITED STATES CONSTITUTION, RETALIATION/RETALIATION CONSPIRACY, AND DEFAMATION.

122. All paragraphs are incorporated herein by reference and made this paragraph.

123. Defendant: Nicklow has worked for the PA. D.O.C. for many years.

124. Defendant: Nicklow has attended dozens of training sessions and classes on the appropriate methods for ensuring proper care, custody and control of

prisoners housed within the PA. D.O.C..

125. Defendant: Nicklow having knowledge of the PA. D.O.C. Directives, and D.O.C. Code of Ethics, has a duty to uphold and enforce the PA. D.O.C. Directives.

126. The PA. D.O.C. has put into place a chain of command procedure to follow, when expressing one's concerns or filing grievances, but the ranking officers often fail to enforce established PA. D.O.C. policies against their subordinates.

127. Plaintiff did adhere to the PA. D.O.C.'s chain of command procedures by presenting to Defendant: Nicklow evidence of Defendants: Bauman, Attinger, and Donadi, unprofessional conduct, but Defendant: Nicklow being the authoritative supervisor of all said defendants failed to act. Instead, Defendant: Nicklow colluded with Defendants: Attinger, and Donadi, by allowing them to continue their "Campaign of Harrassment" and failed to protect plaintiff without holding either defendant accountable for their conduct.

128. Plaintiff has personally expressed his concerns about both defendants to Defendant: Nicklow and has presented him with documentation of violations committed against plaintiff by both defendants; but Defendant: Nicklow failed to act or hold either defendant accountable for their conduct.

129. Defendant: Nicklow being the Deputy Superintendent, who is in charge of security management inside of the prison and having the authoritative duty to correct the violations against plaintiff; but chose not too. Instead, did choose to collude with said defendants to retaliate, defame, and fail to protect plaintiff.

130. But for the actions of Defendant: Nicklow as described herein, plaintiff would not have been assaulted with a weapon while performing his job, retaliated against, and defamed.

131. Wherefore, plaintiff request judgement on this count.

Count #7   DEFENDANT MCGINLEY, IN VIOLATION OF PLAINTIFF'S EIGTH AMENDMENT RIGHT
          TO THE UNITED STATES CONSTITUTION, FAILURE TO PROTECT. DEFENDANT MCGINLEY
          ALSO IN VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHT TO THE UNITED
          STATES CONSTITUTION, RETALIATION/RETALIATION CONSPIRACY, AND DEFAMATION.

132. All paragraphs are incorporated herein by reference and made this paragraph.

133. Defendant: McGinley has worked for the PA. D.O.C. for many years.

134. Defendant: McGinley has attended dozens of training sessions and classes on
     the appropriate methods for ensuring proper care, custody and control of
     prisoners housed within the PA. D.O.C..

135. Defendant: McGinley having knowledge of the PA. D.O.C. Directives, and D.O.C.
     Code of Ethics, has a duty to uphold and enforce the PA. D.O.C. Directives.

136. The PA. D.O.C. has put into place a chain of command procedure to follow when
     expressing one's concerns or filing grievances, but the ranking officers often
     fail to enforce established PA. D.O.C. policies against their subordinates.

137. Plaintiff did adhere to the PA. D.O.C.'s chain of command procedures by
     presenting to Defendant: McGinley evidence of Defendants: Bauman, Attinger,
     and Donadi's unprofessional conduct, but Defendant: McGinley being the
     authoritative supervisor of all said defendants failed to act. Instead,
     Defendant McGinley colluded with all defendants and allowed them to continue
     their "Campaign of Harrassment" and failed to protect plaintiff without holding
     either defendant accountable for their conduct.

138. Plaintiff has personally expressed his concerns about all defendants to
     Defendant: McGinley and has presented him with documentation of violations
     committed against plaintiff by all defendants; but Defendant: McGinley failed
     to act or hold either defendant accountable for their conduct.

139. Defendant: McGinley being the superintendent who is in charge of the entire prison and having the authority and duty to correct the violations chose not too. Instead, did collude with all defendants in failing to protect, retaliate, and defame plaintiff.

140. But for the actions of Defendant: McGinley as described herein, plaintiff would not have been assaulted with a metal weapon while performing his job, retaliated against, or defamed.

141. Wherefore, plaintiff request judgement on this count.

Count #8   DEFENDANT WETZEL, IN VIOLATION OF PLAINTIFF'S EIGTH AMENDMENT RIGHT TO THE UNITED STATES CONSTITUTION, FAILURE TO PROTECT. DEFENDANT WETZEL ALSO IN VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHT TO THE UNITED STATES CONSTITUTION, RETALIATION/RETALIATION CONSPIRACY, AND DEFAMATION.

142. All prior paragraphs are incorporated herein by reference and made this paragraph.

143. Defendant Wetzel has worked for the PA. D.O.C. for many years.

144. Defendant Wetzel has attended dozens of training sessions and classes on the appropriate methods for ensuring proper care, custody and control of prisoners housed within the PA. D.O.C..

145. Defendant Wetzel is aware that officials at SCI—Coal Township do not, as a matter of practice, comply with PA. D.O.C. policies which he himself has established.

146. By knowing about, yet refusing to correct the culture at SCI—Coal Township of running things in violation of established PA. D.O.C. policy, Defendant Wetzel has, in effect, permitted it.

147. But for the actions of Defendant Wetzel as described herein, the plaintiff

would not have been assaulted with a metal weapon while performing his job, nor would plaintiff have been retaliated against or defamed.

148. Wherefore, the plaintiff requests judgement on this count.

**Count #9  DEFENDANTS: ATTINGER, DONADI, LUSCAVAGE, NICKLOW, McGINLEY, AND WETZEL, ARE ALSO IN VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHT TO THE UNITED STATES CONSTITUTION, RETALIATION; BY HAVING PLAINTIFF TRANSFERRED FOR FILING GRIEVANCES.**

**VII. Relief Requested:**

149. A declaration that the acts and omissions described herein violated plaintiff's rights under the constitution and laws of the United States.

150. A preliminary and permanent injunction ordering defendants to stop retaliating against plaintiff, and stop fabricating false defaming reports against plaintiff.

151. A permanent injunction ordering defendants to remove all fabricated defaming job reports and misconduct reports from plaintiff's files, that was created by plaintiffs.

152. Issue an injunction ordering defendants to continue to carry out without delay medical treatment for plaintiff who suffers from PTSD as a result of the defendants negligence.

153. Issue an injunction ordering defendants to reinstate plaintiff back to work as a barber in the PA. D.O.C..

154. Compensatory and punitive damages in the amount of $50.000, against each defendant, jointly and severally.

155. Plaintiff's cost in this suit, actual damages reimbursing plaintiff for all

wages since being removed from his job as a barber.

156. A jury trial on all issues triable by jury.

157. Any additional relief this court deems just, proper, and equitable that is not mentioned herein.

158. Wherefore, plaintiff respectfully prays that this court enter judgement granting plaintiff relief to the following.

## VERIFICATION

Under Federal Rule of Civil Procedure Rule 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint; **(1)** Is not being presented for an improper purpose, such as to harass, cause unneccessary delay, or needlessly increase the cost of litigation; **(2)** Is supported by existing law or by a nonfrivilous argument for extending, modifying, or reversing existing law; **(3)** The factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and **(4)** The complaint otherwise complies with the requirements of Rule 11.

Executed at: SCI-Smithfield
1120 Pike Street
Huntingdon,PA 16652

Date: 12/10/20

/s/: Edmond Calloway
Edmond Calloway – CZ-1156

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Edmond Calloway - CZ-1154
SCI-Coal Township
1 Kelley Drive                                    :
Coal Township, PA 17866

                                                  :

Edmond Calloway,                                  :     Civil Action
        **Plaintiff**                                   Case No.#
                                                  :
        vs.
                                                  :

(1). Sergeant: Bauman
(2). Correctional Officer: S. Beaver              :
(3). Barber Instructor: Brenda Attinger
(4). Principal: George Donadi                     :
(5). Dep. Supt. for Facilities Management:
     Anthony Luscavage                            :
(6). Dep. Supt. for Centralized Services:
     William Nicklow                              :
(7). Superintendent: Thomas McGinley
(8). Secretary of Corrections: John Wetzel,       :
        **Defendants**

                                                  :

**FILED
SCRANTON**

DEC 1 4 2020

PER _____
        DEPUTY CLERK

### NOTICE TO DEFEND

To the above named defendants:

    You have been sued in court. If you wish to defend against these claims set forth in the following pages, you must take action within (20) days after this complaint and notice are served , by entering a written appearance  personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgement may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.