IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDMOND CALLOWAY, | : | Civil No. 1:20-cv-2337 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| SERGEANT BAUMAN, *et al.*, | : | |
| Defendants | : | |

**MEMORANDUM**

Plaintiff Edmond Calloway ("Calloway"), an inmate in state custody, commenced this *pro se* civil action pursuant to 42 U.S.C. § 1983. (Doc. 1). Presently before the Court is Calloway's motion to compel discovery. (Doc. 58). The motion is fully briefed and ripe for resolution. For the reasons set forth below, the Court will grant in part and deny in part Calloway's motion to compel.

**I.    Factual Background and Procedural History**

The events underlying Calloway's civil rights complaint occurred in August 2019 at the State Correctional Institution at Coal Township, Pennsylvania ("SCI-Coal Township"). (Doc. 1 ¶¶ 3-11, 15-33). On August 7, Calloway was working in the barber shop at SCI-Coal Township, which is located in a separate building from where inmates are housed. (*Id.* ¶¶ 15, 18). Around 9:10 a.m., another prisoner—Bordoy-Rabelo—was sent to the barbershop for a haircut and assigned to Calloway's chair. (*Id.* ¶¶ 19-20). Bordoy-Rabelo allegedly requested a specialty haircut that was prohibited by Pennsylvania Department of

Corrections ("DOC") policy, and Calloway advised Bordoy-Rabelo that he could not give him the requested haircut because DOC policy did not allow it. (*Id.* ¶¶ 20-21).

Apparently displeased with Calloway's response, Bordoy-Rabelo became irate and "verbally disrespectful," so Calloway advised him to have another barber cut his hair. (*Id.* ¶ 22). Bordoy-Rabelo received a haircut from another barber and, at approximately 9:30 a.m., he left the barbershop and returned to his housing unit. (*Id.* ¶ 23). Ten minutes later, Bordoy-Rabelo—armed with a metal "lock-in-a-sock," which presumably is exactly what its name describes—allegedly left his housing unit without authorization, entered the building where the barbershop was located, bypassed a metal detector because defendant Sergeant Bauman was not at his post, entered the barbershop, and proceeded to violently attack Calloway with the weapon, "striking him repeatedly in the head." (*Id.* ¶¶ 24-27). Calloway defended himself as best as possible and, at approximately 9:42 a.m., Bauman arrived from inside the gym and ended the altercation by deploying pepper spray. (*Id.* ¶ 28). As a result of the assault, Calloway asserts that he suffered contusions and lacerations, severe migraines, a seizure, and post-traumatic stress. (*Id.* ¶¶ 38-44).

Bauman charged Calloway with fighting and refusing to obey an order, and Calloway was placed in disciplinary confinement "for weeks" despite maintaining that he had done nothing wrong. (*Id.* ¶¶ 29-30). Calloway asserts that, after being wrongfully held in disciplinary confinement, Defendant Thomas McGinley eventually "exonerated [him] of any and all wrongdoing." (*Id.* ¶ 33).

## II. Legal Standard

A party who has received evasive or incomplete discovery responses may seek a court order compelling disclosures or discovery of the materials sought. FED. R. CIV. P. 37(a). The moving party must demonstrate the relevance of the information sought to a particular claim or defense. The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper. *Goodman v. Wagner*, 553 F. Supp. 255, 258 (E.D. Pa. 1982).

Generally, courts afford considerable latitude in discovery in order to ensure that litigation proceeds with "the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947). Federal Rule of Civil Procedure 26(b)(1) provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). "[A]ll relevant material is discoverable unless an applicable evidentiary privilege is asserted. The presumption that such matter is discoverable, however, is defeasible." *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000). Furthermore, the court may limit discovery if the discovery sought is unreasonably cumulative, duplicative, or readily obtainable from some other source, the party seeking discovery has had ample opportunity to obtain the information through discovery, or the

proposed discovery is outside the scope permitted by Rule 26(b)(1). FED. R. CIV. P. 26(b)(2)(C).

## III. <u>Discussion</u>

Calloway takes issue with several of Defendants' responses to his requests for production of documents. (Doc. 60). The Court will address each request in turn.

First, Calloway seeks the "Post Order Rules for each defendant, while on duty at their [work] post on 8/7/2019." (Doc. 60, p. 3). Calloway's request for "post order rules" will be denied insofar as it relates to Defendants who hold positions that do not have such rules. Additionally, Calloway's request presumably contains information detailing the security procedures and responsibilities within an area of the prison. The release of such information to an inmate would jeopardize institutional security and will be denied.

Second, Calloway seeks "[a] record of Disciplinary/Fact Finders, brought against each defendant from 1/1/2016-to-8/7/2019, while employed at SCI-Coal Township and all grievances submitted against each defendant from 1/1/2016-to-8/7/2019, while employed at SCI-Coal Township." (Doc. 60, p. 3). Calloway's request for comprehensive disciplinary records from January 1, 2016 to August 7, 2019 for each named Defendant will be denied as stated as premature. His vague argument that this evidence is relevant for character purposes under Federal Rules of Evidence 404(b)(2) and 405(b) is undeveloped and is denied without prejudice and may be raised should this matter proceed to trial. This request will be granted only to the extent that Defendants shall produce—if existing—any relevant

4

disciplinary reports or records for named Defendants involved in the August 7, 2019 incident and relating to that incident. Sensitive identification information, other than prison official names and ranks, may be redacted. Next, Calloway's request for "all grievances" submitted against each Defendant by any inmate from January 1, 2016 to August 7, 2019 will be denied as irrelevant, overbroad, and not proportional to the needs of this case. *See* FED. R. CIV. P. 26(b)(1).

Third, Calloway requests "[a] complete record of the employment history of each of the defendants while employed by SCI-Coal Township." (Doc. 60, p. 4). The Court will deny this request as irrelevant, overbroad, and not proportional to the needs of this case. *See* FED. R. CIV. P. 26(b)(1). Calloway appears to be seeking other-act evidence under Federal Rule of Evidence 404(b)(2), but has not proffered any argument or case law for why such information is discoverable or admissible other than for use in an impermissible propensity manner.

Fourth, Calloway seeks "Plaintiff Edmond Calloway's entire prison employment record from 12/1/2011-to-9/3/2020 while employed at SCI-Coal Township, and [a] complete copy of plaintiff's DC-14 File, and plaintiff's DC-121 File regarding plaintiff's employment" to establish a history of good conduct. (Doc. 60, p. 4). In response, Defendants contend that SCI-Coal Township does not keep a "prison employment record" and that they have produced the employment records in their possession. (Doc. 64, pp. 17-18). Calloway's request for his DC-14 file will be granted insofar as Defendants shall produce such

documents that are relevant, not protected by privilege, and may be released to Calloway with appropriate redactions. Calloway's request for his "DC 121 File" will be denied insofar as Defendants aver that no such information exists. (*Id.* at p. 19).

Fifth, Calloway requests a "recorded log of all the assaults on inmates by other inmates with weapons" from January 1, 2016, to the date of incident. (Doc. 60, p. 4). The Court will deny this request as overly broad and unduly burdensome. Additionally, the release of information relating to other inmates is strictly prohibited and raises institutional security concerns. *See* DC-ADM 003, Release of Information, https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/003%20Release%20of%20Information.pdf (last accessed Aug. 29, 2022).

Sixth, Calloway seeks all separation documents regarding his transfer to SCI-Smithfield. (Doc. 60, p. 4). This request will be denied because the production of transfer records would likely jeopardize institutional security. Moreover, Defendants maintain that Department Policy 11.1.1 sets forth the policies and regulations surrounding inmate transfers and separations, and Section 4 (Separations) is clearly marked confidential and is not subject to public disclosure. (Doc. 64, pp. 22-23) (*see also* Department Policy 11.1.1, https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/11%2001%2001%20Population%20Management.pdf (last accessed Aug. 29, 2022)).

Seventh, Calloway seeks "[a]ny and all rules, regulations, or directives and policies of the Department of Corrections of Pennsylvania regarding the safety protocols of inmates

6

in the D.O.C." (Doc. 60, p. 5). The Court will deny this request, as stated, as overbroad, unduly burdensome, and not proportional to the needs of this case. *See* FED. R. CIV. P. 26(b)(1). It also appears that Calloway is specifically seeking policies or directives related to metal detector usage in DOC facilities. (*Id.* at p. 19). This request will also be denied. The release of such information to inmates would raise institutional security concerns and would override any relevance or necessity of these documents to Calloway's lawsuit.

Eighth, Calloway requests answers to interrogatories and requests for admission. (Doc. 60, pp. 5-6). However, Calloway has not set forth any argument, law, or rationale for why he believes that the roughly 75 interrogatories he has identified should be answered or answered differently. The Court will deny this request.

Finally, Calloway seeks video footage from August 7, 2019, the date of the incident. (Doc. 60, p. 6). This request will be granted. Within 10 days of the date of this Order, Defendants shall provide the Court with copies of the preserved video evidence from August 7, 2019.

## IV.   Conclusion

For the reasons set forth herein, Calloway's motion (Doc. 58) to compel will be granted in part and denied in part. A separate Order shall issue.

_____
Robert D. Mariani
United States District Judge

Dated: August 30, 2022