# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EDMOND CALLOWAY,                          :        Civil No. 3:20-cv-2337
                                          :
             Plaintiff                    :        (Judge Mariani)
                                          :
     v.                                   :
                                          :
SERGEANT BAUMAN, *et al.*,                :
                                          :
             Defendants                   :

## <u>MEMORANDUM</u>

Plaintiff Edmond Calloway ("Calloway"), an inmate in state custody, commenced this *pro se* civil action pursuant to 42 U.S.C. § 1983.  (Doc. 1).  Named as Defendants are Sergeant Bauman, Correctional Officer S. Beaver, Barber Instructor Brenda Attinger, Principal George Donadi, Deputy Superintendent Anthony Luscavage, Deputy Superintendent William Nicklow, Superintendent Thomas McGinley, and former Secretary John Wetzel.  Presently ripe for disposition is Defendants' motion (Doc. 68) for summary judgment pursuant to Federal Rule of Civil Procedure 56.  For the reasons set forth below, the Court will grant the motion.

## I.    Statement of Undisputed Facts[1]

While incarcerated at the State Correctional Institution at Coal Township,

Pennsylvania ("SCI-Coal Township"), Calloway worked as an inmate barber in the

barbershop which is located in the gym/recreation building of the facility.  (Doc. 69 ¶ 1; Doc.

81 ¶ 1).  As an exhibit in support of their motion for summary judgment, Defendants

submitted the video surveillance from a fixed camera in the barbershop and a fixed camera

in the hallway outside of the barbershop.  (Doc. 69-1, August 7, 2019 Video Surveillance

from Barbershop and Hallway; *see also* Doc. 88).

On the morning of August 7, 2019, Calloway reported to work at the barbershop.  (*Id.*

¶ 2).  Around 9:10 a.m., another prisoner—Bordoy-Rabelo—was sent to the barbershop for

a haircut and assigned to Calloway's chair.  (Doc. 1 ¶¶ 19-20; Doc. 81 ¶¶ 2-3).  Inmate

Bordoy-Rabelo allegedly requested a specialty haircut that was prohibited by Pennsylvania

---

[1]    Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  LOCAL RULE OF COURT 56.1. Defendants filed their statement of material facts. (Doc. 69).  Calloway filed a statement of material facts (Doc. 81) however his statement of material facts fails to comply with Local Rule 56.1 which requires a party opposing a motion for summary judgment to "include a separate, short and concise [responsive] statement of the material facts, responding to the numbered paragraphs set forth in" the movant's fact statement. *See* LOCAL RULE 56.1.  Calloway's responsive fact statement (Doc. 81) contains eighty-eight paragraphs and fails to correspond to the fifty-paragraph concise statement of material facts filed by Defendants (Doc. 69).  The averments of Calloway's responsive fact statements are entirely independent of those in Defendants' filing, and the numbered paragraphs of Calloway's submission do not correlate in any meaningful way to the paragraphs in Defendants' statement.  In sum, Calloway's document does not comply with Local Rule 56.1's requirement of parity between the two filings.  Therefore, as authorized by Local Rule 56. 1, the Court will admit as uncontroverted the statement of facts submitted by Defendants that Calloway has not contested. *See* LOCAL RULE 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.").  To the extent that Calloway disputes Defendants' fact statements, the Court cites to Calloway's statement of facts.

Department of Corrections ("DOC") policy, and Calloway advised Bordoy-Rabelo that he could not give him the requested haircut because DOC policy did not allow it. (Doc. 1 ¶¶ 20-21; Doc. 81 ¶ 4). Apparently displeased with Calloway's response, Bordoy-Rabelo became irate and "verbally disrespectful," so Calloway advised him to have another barber cut his hair. (Doc. 1 ¶ 22; Doc. 81 ¶ 4). Bordoy-Rabelo received a haircut from another barber and, at approximately 9:30 a.m., he left the barbershop and returned to his housing unit. (Doc. 1 ¶ 23; Doc. 81 ¶ 5). Calloway contends that inmate Bordoy-Rabelo then returned to his housing unit and briefly entered his cell. (Doc. 81 ¶¶ 8-10). Calloway asserts that inmate Bordoy-Rabelo left his housing unit at 9:40:30 and Defendant Beaver did not give him a pass when he exited the housing unit, as required by DOC policy. (*Id.* ¶¶ 11-17).

Around 9:40:55 a.m., three inmate mail workers arrived in the gym/recreation building with the mail delivery and approached Defendant Bauman. (Doc. 69 ¶ 8; Doc. 81 ¶ 18). Calloway asserts that Defendant Bauman allowed these three inmate mail workers to bypass the metal detector. (Doc. 81 ¶ 18). Inmate Bordoy-Rabelo then calmly entered the gym/recreation building at 9:41:22 a.m. (Doc. 69 ¶ 9). Calloway maintains that Defendant Bauman allowed inmate Bordoy-Rabelo to bypass the metal detector before entering the barber shop. (Doc. 81 ¶ 19). Defendant Bauman entered the gym/recreation building office to handle the incoming mail. (Doc. 69 ¶ 10; Doc. 81 ¶ 20). When Defendant Bauman was in the office, Calloway asserts that the metal detector was unattended. (Doc. 81 ¶ 20).

Inmate Bordoy-Rabelo opened the barbershop door and entered the barbershop at 9:41:45 a.m.  (Doc. 69 ¶¶ 11-12; Doc. 81 ¶ 21).  Inmate Bordoy-Rabelo calmly entered the barbershop and proceeded down the left aisle of the room.  (Doc. 69 ¶ 13; Doc. 81 ¶ 21). When inmate Bordoy-Rabelo was in middle of the room, he pulled a concealed lock-in-a-sock from his back right pocket and abruptly approached Calloway, who was cutting another inmate's hair.  (Doc. 69 ¶¶ 14-15; Doc. 81 ¶ 22).  Inmate Bordoy-Rabelo attacked Calloway with the lock-in-a-sock.  (Doc. 69 ¶ 16).  Calloway responded to the attack and utilized the barber clippers he was using to cut another inmate's hair to defend himself from the attack. (Doc. 69 ¶ 17).  Calloway never interacted with inmate Bordoy-Rabelo prior to this date.  (*Id.* ¶ 4).

Defendant Attinger's shock and immediate response to call for back-up is visible on the video.  (Doc. 69 ¶ 18).  Defendant Bauman is first seen responding to Defendant Attinger's call for assistance when he exited the gym/recreation building office and opened the barbershop door at 9:42:22 a.m.  (Doc. 69 ¶ 19; Doc. 81 ¶ 25).  Defendant Bauman arrived at the barbershop approximately thirty-five seconds after the physical attack began. (Doc. 69 ¶ 20).  Calloway asserts that he was restraining inmate Bordoy-Rabelo when Defendant Bauman entered the barber shop, and Defendant Bauman never saw Calloway strike inmate Bordoy-Rabelo with the clippers.  (Doc. 81 ¶¶ 24-25).

Defendant Bauman ordered both Calloway and inmate Bordoy-Rabelo to stop fighting, but neither complied.  (Doc. 69 ¶ 21).  Since neither inmate complied with orders

4

given and continued to fight with their respective weapons, Defendant Bauman deployed oleoresin capsicum ("OC") against Calloway and inmate Bordoy-Rabelo.  (*Id.* ¶ 22).  Defendant Bauman then physically restrained inmate Bordoy-Rabelo.  (*Id.* ¶ 23).  Two additional officers and two staff members arrived to assist with regaining positive physical control over the physical altercation.  (*Id.* ¶ 24).  Staff restrained Calloway and escorted him out of the barbershop.  (*Id.* ¶ 25).  After receiving medical treatment, staff escorted Calloway to the Restricted Housing Unit ("RHU") on August 7, 2019.  (*Id.* ¶ 26).

As a result of the physical altercation, Defendant Bauman issued Calloway misconduct number D188738, for fighting.  (*Id.* ¶ 27).  Calloway asserts that Defendant Bauman was not truthful in the misconduct report because he never actually witnessed Calloway strike inmate Bordoy-Rabelo.  (Doc. 81 ¶¶ 26-27).  On August 14, 2019, a misconduct hearing was held, and Calloway had the opportunity to present his side of the facts regarding the attack.  (Doc. 69 ¶ 28).  After hearing all evidence, including video, and Calloway's defenses and challenges to the misconduct against him, the hearing examiner determined that the video demonstrated that Calloway fought and hit the inmate with barber clippers.  (*Id.* ¶ 29).  The hearing examiner sanctioned Calloway with thirty days' disciplinary custody time.  (*Id.* ¶ 30).  Calloway appealed the hearing examiner's decision to the Program Review Committee ("PRC").  (*Id.* ¶ 31).  The PRC determined that the punishment was not disproportionate to the offense and the findings of fact were not insufficient to support the decision of the hearing examiner.  (*Id.* ¶ 32).  Calloway then appealed the

5

PRC's decision to the Superintendent of the facility. (*Id.* ¶ 33). The Superintendent exonerated Calloway from the misconduct charges because the evidence illustrated that Calloway had the need to protect himself from an unprovoked assault. (*Id.* ¶ 34).

On August 26, 2019, Calloway returned to general population housing. (*Id.* ¶ 35). While in the RHU, Calloway was not permitted to work as a barber. (*Id.* ¶ 36). However, when Calloway was released to general population on August 26, 2019, he was permitted to be reinstated as a barber and he continued working in the barbershop. (*Id.* ¶ 37).

On September 15, 2020, the Department transferred Calloway to the State Correctional Institution at Smithfield, Pennsylvania ("SCI-Smithfield") for security reasons. (*Id.* ¶ 38).

Calloway filed several inmate grievances regarding various instances of alleged retaliation including the following: (1) inmate grievance number 835221 on November 12, 2019, alleging Defendant Attinger retaliated against him by filing inmate misconduct charges against him that he was later exonerated of; (2) inmate grievance number 838758 on November 27, 2019, alleging Defendant Attinger retaliated against him by filing fabricated misconduct charges against him that he was later exonerated of; (3) inmate grievance number 837899 on November 21, 2019, again alleging that Defendant Attinger retaliated against him by filing fabricated misconduct charges; (4) inmate grievance number 891591 on September 18, 2020, alleging that false reports were placed in his employment file thereby defaming him, affecting his employment, and causing his transfer out of SCI-Coal

Township; and (5) inmate grievance number 891933 on September 16, 2020, alleging staff transferred him to another prison in retaliation.  (Doc. 69 ¶ 39; Doc. 81 ¶ 36).  Defendants maintain that Calloway assumes they received notice of his claims of retaliation, various complaints, and intent to file a lawsuit through the submission of his inmate grievances. (Doc. 69 ¶ 40).

Defendants McGinley, Luscavage, Nicklow, and Donadi all provided responses to Calloway's inmate grievances or grievances appeals.  (Doc. 69 ¶ 41; Doc. 81 ¶¶ 49, 54, 57-59, 69, 79, 82).  Defendants Attinger, Beaver, and Bauman did not provide any response to Calloway's inmate grievances or grievances appeals.  (Doc. 69 ¶ 42).  Defendants maintain that there is no evidence in the record to indicate that Defendants Attinger, Beaver, and Bauman ever received notice that inmate grievances were filed by Calloway against them. (*Id.* ¶ 43).  Defendant Wetzel's office received correspondence from Calloway and notified him of his appeal options and notified personnel at SCI-Coal Township of Calloway's allegations.  (*Id.* ¶ 44).  Defendants assert that Calloway assumes Defendant Wetzel had knowledge of his claims of retaliation through his mailing of correspondence to Defendant Wetzel's office and through the filing of inmate grievances.   (*Id.* ¶ 45).

Several months occurred between the physical altercation in the barbershop on August 7, 2019, the time period during which Calloway filed inmate grievances from August 8, 2019 to November 27, 2019, and Calloway's transfer out of SCI-Coal Township on September 15, 2020.  (*Id.* ¶ 46).

7

Calloway filed the instant complaint on December 14, 2020. (*Id.* ¶ 16). In the complaint, Calloway named the following Defendants: Sergeant Bauman, Correctional Officer Beaver, Barber Instructor Attinger, Principal Donadi, Deputy Superintendent Luscavage, Deputy Superintendent Nicklow, Superintendent McGinley, and former Secretary of Corrections Wetzel. (*Id.* ¶ 48). Calloway alleges that his rights were violated under the First and Eighth Amendments to the United States Constitution. (*Id.* ¶ 16). He also raises defamation and civil conspiracy claims. (*Id.* ¶ 16).

## II.   Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S.

8

at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by citing to particular parts of materials in the record . . . or showing that the

materials cited do not establish the absence or presence of a genuine dispute, or that an

adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P.

56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court

need consider only the cited materials, but it may consider other materials in the record."

FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-

moving party, and where the non-moving party's evidence contradicts the movant's, then

the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974

F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party

only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127

S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the

summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical
> doubt as to the material facts. Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving party, there is no genuine
> issue for trial. The mere existence of some alleged factual dispute between
> the parties will not defeat an otherwise properly supported motion for
> summary judgment; the requirement is that there be no genuine issue of
> material fact. When opposing parties tell two different stories, one of which is
> blatantly contradicted by the record, so that no reasonable jury could believe
> it, a court should not adopt that version of the facts for purposes of ruling on a
> motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

III.   **Discussion**

A.   **Official Capacity Claims**

Defendants first argue that Calloway's claims against them in their official capacities are barred by sovereign immunity.  (Doc. 70, p. 11).  The Court agrees.  Personal capacity suits under section 1983 seek to recover money from a government official, as an individual, for acts performed under color of state law.  *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988).  Official capacity suits, in contrast, generally represent an action against an entity of which the government official is an agent.  *Id.*; *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n. 55 (1978).  When suits are brought against state officials in their official capacities, those lawsuits are treated as suits against the state.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  However, the doctrine of sovereign immunity, established by the Eleventh Amendment, protects states, such as the Commonwealth of Pennsylvania, from suits by citizens.  *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-01, 117 (1984); *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996); *Lavia v. Pennsylvania*, 224 F.3d 190, 195-96 (3d Cir. 2000).  That immunity runs to state officials if they are sued in their official capacity and the state is the real party upon which liability is sought.  *Scheuer v. Rhodes*, 416 U.S. 232, 237-38 (1974).  Congress has not abrogated the immunity regarding

Calloway's claims, nor has Pennsylvania waived this grant of immunity. *See* 42 PA. C.S.A.

§ 8521(b). Thus, Calloway's section 1983 claims against the Defendants in their official

capacities are barred by sovereign immunity. *See Betts v. New Castle Youth Dev. Ctr.*, 621

F.3d 249, 254 (3d Cir. 2010). Defendants' motion will be granted with respect to this claim.

    **B.**    **Claims against Defendants Wetzel, McGinley, Nicklow, Luscavage, and Donadi**

Defendants argue that Wetzel, McGinley, Nicklow, Luscavage, and Donadi lack

personal involvement in the alleged wrongdoing. (Doc. 70, pp. 11-15). Individual liability

can be imposed under section 1983 only if the state actor played an "affirmative part" in the

alleged misconduct and "cannot be predicated solely on the operation of respondeat

superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v.*

*Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must

have personal involvement in the alleged wrongs. . . . Personal involvement can be shown

through allegations of personal direction or of actual knowledge and acquiescence." *Rode*,

845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316

F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate

particularity in that a complaint must allege the particulars of conduct, time, place, and

person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a

mere hypothesis that an individual defendant had personal knowledge or involvement in

depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*,

845 F.2d at 1208.

Calloway concedes that Defendant Wetzel is not personally involved in the claims of "negligence and retaliation." (Doc. 80, p. 23). Therefore, Defendant Wetzel is entitled to dismissal from this case for lack of personal involvement.

With respect to Superintendent McGinley, Deputy Superintendent Nicklow, Deputy Superintendent Luscavage, and Principal Donadi, a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendants were prison supervisors when the incidents set forth in the complaint occurred. *See Rode*, 845 F.2d at 1207. Any attempt by Calloway to hold Defendants McGinley, Nicklow, Luscavage, and Donadi liable for the actions of their subordinates is essentially an assertion of *respondeat superior* liability which seeks to hold these Defendants liable based on their supervisory roles. This ground of constitutional liability has been squarely rejected by the courts. *See Rode*, 845 F.2d at 1207.

Calloway also asserts that Defendants McGinley, Nicklow, and Luscavage were notified of the August 7, 2019 attack after viewing video surveillance of the incident. (Doc. 80, pp. 8-21). Because Calloway acknowledges that Defendants McGinley, Nicklow, Luscavage became aware of the events after they occurred, they could not have participated in the incident that occurred on August 7, 2019. Moreover, Calloway has not established that Superintendent McGinley, Deputy Superintendent Nicklow, and Deputy Superintendent Luscavage personally established and maintained a policy, practice, or custom that caused the constitutional harm at issue herein. Importantly, while Calloway

does allege that these Defendants are responsible for establishing and/or maintaining DOC

policy, his claim is premised on his belief that Defendant Bauman was not acting according

to policy when he left his post on August 7, 2019, and that Defendant Beaver was not acting

according to policy when inmate Bordoy-Rabelo left the housing unit without a pass.  He

thus asserts that Defendants Bauman and Beaver "[were] not alert while on duty."  (Doc. 80,

p. 20).  To the extent that Calloway is, instead, asserting that it is the practice or custom of

these Defendants to essentially turn a blind eye to the actions of their employees that do not

comply with DOC policy, such claims are insufficient to show that Superintendent McGinley,

Deputy Superintendent Nicklow, and Deputy Superintendent Luscavage had any personal

knowledge or involvement in the incident that took place on August 7, 2019.  *See, e.g.,*

*McAllister v. Wiekl*, No. 1:12-CV-2273, 2014 WL 795084, at *5 (M.D. Pa. Feb. 27, 2014).

Lastly, Calloway cannot establish liability against Defendants McGinley, Nicklow,

Luscavage, and Donadi based upon their handling of his administrative grievances.  It has

long been recognized that a state prisoner's allegation that prison officials and

administrators responded inappropriately, or failed to respond to a prisoner's grievance, is

insufficient to establish personal involvement in the underlying unconstitutional conduct.

*See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (grievance coordinator and

Superintendent's involvement in the review and denial of inmate grievance was insufficient

to establish personal involvement); *Rode*, 845 F.2d at 1207-1208 (concluding that after-the-

fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to

establish personal involvement); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential) (holding that allegations that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct).

Based on the foregoing, the Court will grant Defendants' motion for summary judgment based on lack of personal involvement of Wetzel, McGinley, Nicklow, Luscavage, and Donadi.

### C.    Eighth Amendment Claim

The Eighth Amendment requires a prison official to "take reasonable measures to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  While a prison official has a duty to protect prisoners from attacks by other prisoners, not every injury suffered by a prisoner at the hands of another translates to constitutional liability for the official responsible for the prisoner's safety. *Id.* at 833-34.  An inmate making a failure to protect claim has the burden of proof to establish that a prison official both knew of and chose to disregard an "excessive risk to inmate health or safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 837). The United States Court of Appeals for the Third Circuit has further held that the knowledge requirement is subjective, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Id.*; *see Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997).  Actual knowledge can be proven

14

circumstantially where the general danger was obvious.  *Farmer*, 511 U.S. at 842.  For

example, if the prisoner-plaintiff

> presents evidence showing that a substantial risk of inmate attacks was
> longstanding, pervasive, well-documented, or expressly noted by prison
> officials in the past, and the circumstances suggest that the defendant-official
> being sued had been exposed to information concerning the risk and thus
> must have known about it, then such evidence could be sufficient to permit a
> trier of fact to find that the defendant-official had actual knowledge of the risk.

*Id.* at 842-43 (quotation marks and citation omitted).  However, "a defendant can rebut a

prima facie demonstration of deliberate indifference either by establishing that he did not

have the requisite level of knowledge or awareness of the risk, or that, although he did know

of the risk, he took reasonable steps to prevent the harm from occurring."  *Beers-Capitol*,

256 F.3d at 133.

Here, Calloway alleges that Defendants failed to protect him from inmate Bordoy-

Rabelo, who struck him with a lock-in-a-sock.  Defendants argue that Calloway's claim must

fail because he has not established that inmate Bordoy-Rabelo posed a serious risk of harm

to him and that they were aware of any such threat of harm.  (Doc. 70, pp. 19-21).

The uncontroverted record reflects that Calloway did not alert Defendants about any

danger posed by inmate Bordoy-Rabelo.  Based on Calloway's own account, he had no

interaction with inmate Bordoy-Rabelo prior to the incident on August 7, 2019.  At his

deposition, Calloway testified as follows:

> Q.   Okay.  Now, prior to this interaction with Inmate Rabelo on
>       August 7th, did you previously know him?

A.    No.

Q.    Okay.  So you never talked to him before this date then?

A.    I don't even remember actually seeing the guy before.  He must
      have been new, yeah.

Q.    Okay.  That was my next question.  Like did you see him in the
      housing unit or in the yard or anything of that nature?

A.    No.  I can't—I can't say.  I didn't—he don't—there's no
      recollection of me ever seeing him.

(Doc. 69-1, p. 16, Deposition of Edmond Calloway ("Calloway Dep."), Notes of Transcript

("N.T.") 14:10-23).  Calloway has not provided any specific details of what, if anything, he

told prison officials about inmate Bordoy-Rabelo and has not provided any evidence that

inmate Bordoy-Rabelo threatened him, had a history of violence, or was prone to violence

against him.  He also admits that he did not have any previous problems with inmate

Bordoy-Rabelo and did not even know him, such that he would be viewed as a threat.

Even if Defendants were aware that inmate Bordoy-Rabelo had a history of violence,

the Third Circuit has held that the risk that "an inmate with a history of violence might attack

another inmate for an unknown reason" is too speculative to maintain a failure to protect

claim against prison officials.  *Bistrian v. Levi*, 696 F.3d 352, 371 (3d Cir. 2012), *abrogated*

*on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020).  The Third Circuit reiterated

this, affirming a grant of summary judgment to prison officials even where the inmate had

reported a prior attack to an unnamed guard.  *See Zuniga v. Chamberlain*, 821 F. App'x

152, 157 n.8 (3d Cir. 2020).  In the instant case, the record establishes that the assault by

inmate Bordoy-Rabelo was not the product of "longstanding, pervasive, well-documented, or previously noted tensions between" Calloway and inmate Bordoy-Rabelo. *Blackstone v. Thompson*, 568 F. App'x 82, 84 (3d Cir. 2014).

Calloway further asserts that Defendant Bauman was not at his assigned post, which allowed inmate Bordoy-Rabelo to bypass the metal detector. However, Calloway has failed to establish that Defendant Bauman knowingly allowed inmate Bordoy-Rabelo to enter the recreation building with a weapon or that he was aware of and disregarded any specific threat of harm prior to the attack. Nor did Calloway plead that inmate assaults regularly occurred in the recreation building, such that the prison officials should have been aware of a risk of harm. While courts have entertained failure-to-protect claims based on the failure to use metal detectors, those cases involved allegations that prison officials had knowledge of a pervasive problem with prior attacks and showed deliberate indifference by failing to use metal detectors to prevent subsequent attacks. *See, e.g., Warren v. Goord*, 476 F. Supp. 2d 407, 411 (S.D.N.Y. 2007) (denying motion to dismiss a claim that a metal detector would have prevented the inmate's attack, where the inmate had alleged that the defendants were "aware that assaults and stabbings regularly took place in the prison yards," that weapons were often stored in the yards, and that an inmate had previously been killed in the yard for lack of metal detectors); *cf. Emile v. SCI-Pittsburgh*, No. 2:04-cv-974, 2008 WL 4190782, at *6 (W.D. Pa. Sept. 10, 2008) (granting summary judgment based on the lack of "evidence [ ] show[ing] that [the defendants] w[ere] aware of a pervasive risk

of inmate attacks from metal objects in the exercise yards"); *Hannah v. Vanguilder*, No. 08-cv-441, 2010 WL 1372385, at *5 (N.D.N.Y. Feb. 11, 2010) (recommending, *inter alia*, that the court grant summary judgment on a claim that a prison facility implemented a policy or custom under which metal detectors were used sporadically, noting that, "[a]t best, [the plaintiff had] assert[ed] that defendants were negligent in failing always to use the metal detectors"), *report and recommendation adopted*, No. 9:08-cv-441, 2010 WL 1404276 (N.D.N.Y. Apr. 7, 2010).  Here, the video reveals that inmate Bordoy-Rabelo entered the recreation building at 9:41:22 a.m. and proceeded to walk past the metal detector while Defendant Bauman was looking towards the office door.  (*See* Doc. 69-13, August 7, 2019 Video Clip of Hallway).  Inmate Bordoy-Rabelo opened the barbershop door at 9:41:42 a.m. and Defendant Bauman ran into the barbershop at 9:42:24 a.m., approximately thirty-five seconds after the attack began.  (*See id.*).  The video also confirms that Defendant Bauman left his post to enter the office for mere seconds—from 9:41:48 a.m. to 9:42:21 a.m.  (*See id.*).  Calloway failed to meet the deliberate indifference standard under the Eighth Amendment as he failed to submit any evidence to show that any Defendant was aware of a pervasive risk of inmate attacks from metal objects in the barbershop, and only set forth facts amounting to mere negligence.  *See Burton v. Kindle*, 401 F. App'x 635, 637-38 (3d Cir. 2010) (finding inmate plaintiff failed to allege the prison official behaved with deliberate indifference because his complaint did not set forth any facts suggesting the official

personally knew another inmate would attack him and noting that mere negligent conduct is not actionable under § 1983).

To the extent that Calloway asserts that Defendant Bauman violated prison policy when he briefly left his assigned post and that Defendant Beaver violated prison policy when inmate Bordoy-Rabelo left the housing unit without a pass, a violation of an internal prison policy does not automatically rise to the level of a constitutional violation.  "[A] prison policy manual does not have the force of law and does not rise to the level of a constitutional violation."  *Atwell v. Lavan*, 557 F.Supp.2d 532, 556, n. 24 (M.D. Pa. 2008) (citing *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 154 (3d Cir. 2004)).  The Third Circuit has clearly stated that "agency interpretive guidelines 'do not rise to the level of a regulation and do not have the effect of law.'"  *Mercy Catholic Med. Ctr.*, 380 F.3d at 155 (citation omitted).  Therefore, Defendants cannot be liable simply for violating a prison policy.  *See Estrella v. Hogsten*, 2007 WL 2065879 (M.D. Pa. July 16, 2007) (holding that mere failure of prison officials to follow their own regulations alone is not a constitutional violation).

The record would not permit a reasonable factfinder to conclude that Defendants knew that inmate Bordoy-Rabelo posed a risk of harm to Calloway and deliberately ignored that risk.  Therefore, summary judgment in favor of Defendants is appropriate.

**D.    First Amendment Retaliation Claim**

Calloway sets forth a retaliation claim against Defendants McGinley, Nicklow, Luscavage, Donadi, and Attinger based on the issuance of misconducts, job suspension,

and his transfer out of SCI-Coal Township.  (Doc. 80, p. 28).  He concedes that Defendants Beaver and Bauman were not involved in the alleged retaliatory acts.  (*Id.*).

The First Amendment offers protection for a wide variety of expressive activities. *See* U.S. CONST. amend I.  These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct.  *See Turner v. Safley*, 482 U.S. 78, 89 (1987). Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment.  *See Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000).

To prevail on a retaliation claim, Calloway bears the burden of demonstrating three elements.  First, he must prove that he was engaged in a constitutionally protected activity. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  Second, he must demonstrate that he "suffered some 'adverse action' at the hands of prison officials."  *Id.* (quoting *Allah*, 229 F.3d at 225).  This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights."  *Id.* (quoting *Suppon v. Dadonna*, 2013 F.3d 228, 235 (3d Cir. 2000)).  Significantly, the effect of the adverse action must be more than *de minimis*.  *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006).  Third, he is required to show that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision" to take action against him.  *Rauser*, 241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

If a prisoner establishes a prima facie case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). If the prison officials can make this showing, it defeats the retaliation claim. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

Calloway first avers that Defendants transferred him to another correctional facility in retaliation for filing grievances. It is undisputed that the filing of an inmate grievance constitutes a constitutionally protect activity. (*See* Doc. 70, p. 22; *see also Fantone v. Latini*, 780 F.3d 184, 192 n.8 (3d Cir. 2015) ("The filing of a prison grievance is an activity protected by the First Amendment.")). Calloway has thus satisfied the first *Rauser* prong. Next, the Court must consider whether Calloway has established that he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *See Rauser*, 241 F.3d at 333. Calloway contends that the transfer to another prison resulted in the loss of his prison job, which would deter a person of ordinary firmness from exercising his First Amendment rights. *See Allah*, 229 F.3d at 224-25; *cf. Collazo v. Rozum,* 646 F. App'x 274, 276 (3d Cir. 2016) (affirming dismissal of prisoner's First Amendment retaliation claim where he failed to explain how prison transfer was an adverse action). Calloway has met prong two. With respect to prong three, the Court must

determine whether there is a causal connection between the exercise of the constitutional right and the adverse action.  Calloway has not established an "unusually suggestive" temporal proximity between his protected conduct and the Defendants' adverse action: Defendants allegedly transferred Calloway on September 15, 2020, nearly one year after he filed grievances in August and November of 2019.  Calloway has failed to meet prong three and failed to make out a prima facie case of retaliation.

Calloway next asserts that Defendants suspended him from his prison job in retaliation for filing grievances.  (Doc. 80, p. 26).  As stated, the filing of an inmate grievance constitutes a constitutionally protect activity.  *See Fantone*, 780 F.3d at 192 n.8.  Calloway has satisfied the first *Rauser* prong.  With respect to the second element of the *Rauser* test, the termination of prison employment constitutes adverse action sufficient to deter the exercise of First Amendment rights.  *See Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).  Next, the Court must determine whether there is a causal connection between the exercise of the constitutional right and the adverse action.  Calloway has not established an "unusually suggestive" temporal proximity between his protected conduct and the Defendants' adverse action: Defendants allegedly suspended Calloway's job on January 30, 2020 (*see* Doc. 80, p. 26), several months after he filed grievances in August and November of 2019.  *See Williams v. Philadelphia Housing Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (finding that a span of two months between the protected activity and the

adverse action was not enough to establish a causal link).  Calloway has failed to meet

prong three and failed to make out a prima facie case of retaliation.

Calloway also asserts that Defendant Attinger issued a false misconduct against him

in retaliation for the incident on August 7, 2019.  (*See* Doc. 80, p. 26; Doc. 82-7, p. 4).  This

resulted in his placement in Disciplinary Custody.  The filing of a grievance is an activity

protected by the First Amendment and the issuance of a misconduct report constitutes

adverse action as it carries with it more than *de minimis* consequences.  *See Watson*, 834

F.3d at 417, 422; *Mitchell*, 318 F.3d at 530 ("[plaintiff]'s allegation that he was falsely

charged with misconduct in retaliation for filing complaints against [a corrections officer]

implicates conduct protected by the First Amendment"); *see also Allah*, 229 F.3d at 225

(transfer to administrative custody constitutes adverse action).  The Court must next

determine whether there is a causal connection between the exercise of the constitutional

right and the adverse action.  Calloway has not established an "unusually suggestive"

temporal proximity between his protected conduct and the Defendant's adverse action to

support an inference of retaliatory motive because Defendant Attinger issued Calloway the

misconduct on October 29, 2019, more than two months after the assault on August 7,

2019.  (*See* Doc. 80, p. 26; Doc. 82-7, p. 4; *see also Williams*, 380 F.3d at 760).   Nor is

there evidence of record of a pattern or history of antagonism between Calloway and

Attinger creating a dispute of fact sufficient to avoid the entry of summary judgment on

Calloway's retaliation claim.  Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267

(3d Cir. 2007). Calloway failed to satisfy the third *Rauser* prong and has thus failed to make out a prima facie case of retaliation.

Lastly, Calloway avers that he filed grievances against Defendants Bauman, Beaver, and Attinger. (Doc. 80, p. 21). He does not aver that he filed any grievances against Defendants McGinley, Luscavage, Nicklow, or Donadi. (*See id.*). Calloway implies that the purported retaliation of Defendants McGinley, Luscavage, Nicklow, or Donadi is based on the protected conduct that prompted Defendant Attinger to retaliate against him. Courts have consistently rejected retaliation claims "against one defendant based on [protected activity] against another [individual]" for lack of retaliatory motive. *Victor v. Lawler*, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010), *aff'd*, 565 F. App'x 126 (3d Cir. 2014); *see also Evans v. Rozum*, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) ("There is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others."); *Royster v. Beard*, 308 F. App'x 576, 579 (3d Cir. 2009) (affirming summary judgment in favor of defendant on plaintiff's claim that he was retaliated against by a defendant who was not the target of his protected activity). Calloway fails to clear the first *Rauser* hurdle in that he has not established that he was engaged in constitutionally protected activity at the time of the alleged retaliatory conduct of Defendants McGinley, Luscavage, Nicklow, or Donadi. These Defendants are entitled to an entry of summary judgment on this claim.

**E.    State Law Claims**

Defendants seek an entry of summary judgment on Calloway's state law claims of defamation and civil conspiracy, arguing that the doctrine of sovereign immunity bars these claims against state employees. (Doc. 70, pp. 24-27). The Court agrees. It is beyond dispute that, "[t]he Department of Corrections is an agency of the Commonwealth and the defendants, as employees of an agency of the Commonwealth, are entitled to the protection afforded by sovereign immunity." *McGrath v. Johnson*, 67 F.Supp.2d 499, 511 (E.D. Pa. 1999) (citing *Maute v. Frank*, 441 Pa. Super. 401, 402, 657 A.2d 985, 986 (1995) (state prison officials enjoy sovereign immunity); *Robles v. Pennsylvania Dep't of Corrections*, 718 A.2d 882, 884 (Pa. Commw. Ct. 1998) (same)), *aff'd*, 35 F. App'x 357 (3d Cir. 2002). As a general matter, subject only to ten specific statutory exceptions not applicable here, this sovereign immunity bars state law tort claims like those alleged here, since Commonwealth employees are immune from liability for either negligence or intentional torts.[2] *McGrath*, 67 F.Supp.2d at 511, *aff'd*, 35 F. App'x 357 (3d Cir. 2002). Defendants are entitled to an entry of summary judgment on the state law claims.

---

[2]    The ten categories for which sovereign immunity will not apply are: (1) vehicles in the possession or control of a Commonwealth party; (2) acts of health care employees of Commonwealth agency medical facilities or institutions; (3) the care, custody, or control of personal property; (4) a dangerous condition of Commonwealth agency real estate and sidewalks; (5) dangerous conditions of highways created by potholes or sinkholes; (6) the care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines, and (10) sexual abuse. *See* 42 PA. CONS. STAT. ANN. § 8522(b).

## V.   **Conclusion**

The Court will grant Defendants' motion (Doc. 68) and enter judgment in their favor.

A separate Order shall issue.


_____
Robert D. Mariani
United States District Judge

Dated: September _____, 2022